UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR ALEJANDRO ORTUNO ORTUNO, (A 244-752-031),<br>Petitioner,<br>v.<br>WARDEN, CALIFORNIA CITY IMMIGRATION PROCESSING CENTER<br>Respondent. | No. 1:26-cv-07525-DC-CKD<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## I. Factual and Procedural History

Petitioner, a citizen of Venezuela, entered the United States on October 10, 2024, at a port of entry using the CBP-One app. ECF No. 6 at 1.[1] U.S. immigration officials briefly detained Petitioner, initiated removal proceedings against him, and released him. ECF No. 5 at 6. During his period of release, Petitioner applied for asylum and obtained employment. ECF No. 6 at 1-2.

[1] Respondent's form I-213 states that Petitioner entered the U.S. without inspection at a location not designated as a port of entry. ECF No. 5 at 4-6. However, the Notice to Appear ("NTA") alleges that Petitioner applied for admission into the U.S. at the Hidalgo, Texas Port of Entry. Id. at 5-11. Respondent also represents to this Court that Petitioner "entered at a port of entry." Id. at 1.

On July 18, 2026, Petitioner was arrested for driving under the influence ("DUI"). ECF No 5 at 18. The criminal proceedings appear to be pending. Id. On September 2, 2026, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner. Id. at 5. Petitioner is currently detained at the California City Immigration Processing Center, and removal proceedings remain pending. ECF No. 6 at 1.

Petitioner filed an application for a writ of habeas corpus on September 17, 2026, seeking clarification as to the legal basis of his detention and either a custody determination hearing or, if detention found to be unlawful, immediate release. ECF No. 1. Respondent asserts that 8 U.S.C. § 1225(b)(2) governs Petitioner's detention because Petitioner "is an arriving alien who entered at a port of entry," but acknowledges that "this case fits into the category of cases in which the Court has found that [P]etitioner's previous parole into the United States is more significant than the manner of entry." ECF No. 5 at 1-2. Respondent also suggests that the proper remedy is a bond hearing "due to [P]etitioner's criminal history." Id. at 2. In his reply, Petitioner requests immediate release, arguing that he poses no danger or risk of flight and will comply with any terms of release. ECF No. 6.

## II. Legal Standards

### A. Constitutional Standards

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to non-citizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).

Courts examine procedural due process claims in two steps: the first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step

examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews, 424 U.S. 319, applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at 335.

### B. Statutory Immigration Framework

"Where a [non-citizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The Supreme Court described the detention statutes at issue in this case, 8 U.S.C. § 1225 and 8 U.S.C. § 1226, in some detail in Jennings v. Rodriguez, 583 U.S. 281 (2018):

> Under [] 8 U.S.C. § 1225, [a non-citizen] who "arrives in the United States," or "is present" in this country but "has not been admitted," is treated as "an applicant for admission." Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law. § 1225(a)(3).
>
> ….
>
> Both § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain [non-citizens]. [Non-citizens] covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) [non-citizen] "indicates either an intention to apply for asylum ... or a fear of persecution," then that [non-citizen] is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the [non-citizen] has a credible fear of persecution, "the [non-citizen] shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii). [Non-citizens] who are instead covered by § 1225(b)(2) are detained pursuant to a different process. Those [non-citizens] "shall be detained for a [removal] proceeding" if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to

> be admitted' into the country. 8 U.S.C. § 1225(b)(2)(A).
>
> ….
>
> Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of [a non-citizen] "pending a decision on whether the [non-citizen] is to be removed from the United States." § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" [a non-citizen] detained under § 1226(a) "on ... bond" or "conditional parole."

Id. at 286-89 (footnote omitted).

The statutory mechanism for release from detention for an asylum applicant apprehended at the border is temporary release on parole "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A); see also 8 C.F.R §§ 212.5(b), 235.3.

## III. Analysis

As Respondent acknowledges, courts in this district have consistently rejected Respondent's position that non-citizens who are present in the United States unlawfully are subject to mandatory detention under 8 U.S.C. 1226(b)(2). Where non-citizens have been paroled or released from detention, this court has applied the Mathews test to find that due process requires that such non-citizens be afforded a bond hearing prior to any re-detention. See, e.g., Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026); Altin v. Chestnut, No. 1:26-cv-00792-DC-CSK, Doc. No. 8 (E.D. Cal. Feb. 5, 2026). The undersigned finds no meaningful distinction between the above-referenced cases and the instant case in that regard.

As to relief, this court has previously held that "[W]here the government adequately alleges that a changed circumstance warrants a petitioner's immigration detention, the proper remedy for a failure to provide a bond hearing is a post-deprivation bond hearing, not immediate release." Chateauneuf v. Chestnut, No. 1:26-cv-01073-DC-JDP, 2026 WL 523695, at *4 (E.D. Cal. Feb. 25, 2026), citing Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627,

at *3. The instant case is analogous to Calvillo in that Petitioners in both matters were re-detained after a "changed circumstance arguably indicating that Petitioner is a threat to public safety." Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627, at *3. Here, that changed circumstance is Petitioner's 2026 criminal arrest on suspicion of DUI. The undersigned agrees with the conclusion in Calvillo that Respondent bears the burden to show, by clear and convincing evidence, that the alleged changed circumstance demonstrates that Petitioner is either a flight risk or a threat to public safety. Id. Cf. Chateauneuf v. Chestnut, No. 1:26-cv-01073-DC-JDP, 2026 WL 523695 (finding that where the petitioner had *not* previously been detained, the *petitioner* bears the burden because ICE had not made an initial determination regarding flight risk or public safety).

**IV. Recommendations**

Accordingly, IT IS HEREBY RECOMMENDED that Petitioner Cesar Alejandro Ortuno Ortuno's (A 244-752-031) petition for writ of habeas corpus be GRANTED as follows:

1. Respondent be ORDERED to provide Petitioner a bond hearing before an immigration judge within seven (7) days of the date of entry of the order, at which Petitioner shall be allowed to have counsel present;
2. At the bond hearing, Respondent shall bear the burden of demonstrating, by clear and convincing evidence, that the alleged changed circumstances establish that Petitioner is either a flight risk or threat to public safety, such that detention is justified;
3. Within three (3) days of the bond hearing, Respondent shall file a status report in this case confirming that Petitioner has been provided the bond hearing;
4. If Respondent fails to provide Petitioner a compliant and constitutionally adequate bond hearing within seven (7) days, Petitioner shall be immediately released from Respondent's custody on the same terms as his initial grant of parole, and the Clerk be directed to serve the relevant detention facility with a copy of any order granting release;
5. If the government seeks to re-detain Petitioner following any release, it must

provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which Petitioner's eligibility for bond must be considered; and

6. The order not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7) days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 8, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 ortu7525.imm.fnr